IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BROCK STEVENS,

                Plaintiff,              OPINION AND ORDER

   v.

                                          22-cv-615-wmc

LELAND DUDEK,
Acting Commissioner of Social Security,

                Defendant.

---

Plaintiff Brock Stevens seeks judicial review of a final decision of defendant Leland Dudek, Acting Commissioner of the Social Security Administration, finding that he was not disabled within the meaning of the Social Security Act. On appeal, Stevens maintains that the administrative law judge ("ALJ"): (1) failed to find his sleeping difficulties a severe impairment; (2) inadequately considered the severity of his mental impairments; (3) inadequately explained her reasons for rejecting the opinions of a state psychological consultant and another consultative examiner, both of whom found him markedly limited in interacting with others; (4) cherry-picked evidence regarding his ability to interact with others; and (5) failed to account for his specific limitations in concentration, persistence, and pace ("CPP") in formulating his residual functional capacity ("RFC"). Because the court agrees that the ALJ's determination of Stevens' mental health limitations was flawed, the Acting Commissioner's denial of benefits will be reversed and remanded for further proceedings consistent with this opinion.

## BACKGROUND[1]

Claiming an onset date of July 1, 2015, when he was 34 years old, Stevens applied for supplemental security income in July 2020, identifying Asperger's syndrome, generalized anxiety disorder, and extreme joint pain as medical conditions that limited his ability to work.  (AR 192, 233.)

At a hearing before an ALJ, Stevens testified that, on most days, he would go for a walk, write short stories, sit outside, watch birds, and help his aunt cook and clean.  (AR 58-59.)  In response to the ALJ's hypothetical question about a person able to perform light work and "tolerate occasional interaction with supervisors and co[-]workers, no interaction with the public . . . [and] only occasional changes in a routine work setting," the vocational expert ("VE") concluded that plaintiff could work as a cleaner, packager, food preparer, and sorter.  (AR 65-66.)  However, the VE testified in response to a question from Stevens' attorney that unskilled work would be unavailable in a truly isolated workspace involving *no* contact with co-workers, supervisors, or the public.  (AR 67.)

After the hearing, the ALJ found that Stevens had the following severe impairments: osteoarthrosis of multiple joints, autism spectrum disorder, depression, anxiety disorder, and alcohol use disorder. (AR 17.)  At step three, however, the ALJ concluded that Stevens' mental impairments did not meet the criteria of Listings 12.04, 12.06, or 12.10, because he did not have one extreme or two marked limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) CPP; or (4)

---

[1] Citations are to the administrative record ("AR"). (Dkt. #8.)

adapting or managing oneself. (AR 18-19.) At step four, the ALJ further determined that Stevens: had the RFC to perform light work involving simple, routine and repetitive tasks, though not at a production rate pace; could occasionally interact with supervisors and co-workers, though not with the public; and could tolerate occasional changes in his routine work setting. (*Id.*) Finally, at step five, the ALJ concluded that, in addition to his past relevant work as a cleaner, Stevens could perform other jobs available in significant numbers in the national economy, including packager, food preparer, and sorter. (AR 29-31.)

## OPINION

The question before this court is whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration adopted and quotation marks omitted). This standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted). At minimum, this means "the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). However, the court will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

I. **Additional Severe Impairment**

At step two, plaintiff asserts the ALJ ignored that a doctor had diagnosed him with an "unspecified sleep-wake disorder (rule out)" (AR 313), and his reported difficulty sleeping. (*E.g.*, AR 334.) As the Acting Commissioner notes, however, a "rule out" diagnosis only means that there was insufficient evidence to diagnose the condition. *See Griffin v. Barnhart*, 198 F. App'x 561, 564 (7th Cir. 2006) ("the notation to 'rule out mild mental retardation' was by no means a diagnosis"). Absent a diagnosis, the court is left with plaintiff's own reports of difficulty sleeping, which by themselves are not enough to establish a severe impairment at step two. *See* 20 C.F.R. § 416.921 ("We will not use *your statement of symptoms*, a diagnosis, or a medical opinion to establish the existence of an impairment." (emphasis added)).

II. **Severity of Impairments on Interacting with Others**

At step three, plaintiff argues that the ALJ improperly evaluated his impairments and their effect on his ability to work, claiming to be more limited in his ability to understand, remember, or apply information and interact with others. More specifically, plaintiff asserts that the ALJ improperly focused on his outdoor hobbies and activities of daily living without explaining how those activities related to his ability to understand, remember, or apply information. Plaintiff also accuses the ALJ of cherry-picking certain, unfavorable evidence while ignoring that he (1) hit himself when computer games went poorly, (2) reported to a doctor that he had been poisoned by a bartender, (3) did not maintain eye contact, (4) displayed an anxious mood, and (5) had rambling speech and a tangential thought process. Finally, plaintiff asserts that the ALJ improperly concluded

4

that he only had moderate limitations in interacting with others, ignoring reports from his roommate, Sarah Larkin, that he mostly stayed in his room, had difficulty getting along with others, and was fired from jobs due to panic attacks.

Still, plaintiff does *not* claim to have satisfied the criteria of Listings 12.04, 12.06, and 12.10, all of which require *two* marked limitations (or one extreme limitation) in the "paragraph B" areas of mental functioning. Instead, all of plaintiff's step-three criticisms are intended to undermine the ALJ's determination of his RFC at step four as to tolerating occasional interactions with supervisors and co-workers. In particular, plaintiff points to the opinions of state psychological consultants, Dr. Catherine Bard and Dr. John Warren, as well as consultative examiner Dr. Kurt Weber.

Dr. Bard concluded that plaintiff was markedly limited in his ability to interact with others, noting that he would likely have frequent difficulties getting along with co-workers and supervisors. (AR 79, 87.) In support of her opinion, Dr. Bard noted plaintiff's reports that he had been fired due to "misunderstandings and difficulties with co[-]workers," and gotten into fights with roommates and strangers because of his neutral tone, adding that he could have frequent problems with supervisors if they were not clear and direct. (*Id.*) She added that his medical records showed that he had been in a bar fight. (AR 79.)

As for Dr. Weber, he noted in a January 2021 report that plaintiff was "somewhat satisfied" with the amount of social support he received, and his "collateral" (Larkin) was supportive and had his best interests at heart. (AR 407.) Further, plaintiff reported to Dr. Weber that interpersonal communication had always been difficult for him, and people would grow tired of his using an inappropriate tone. (*Id.*) Thus, Dr. Weber found that

5

plaintiff had marked limitations in interacting with others with "considerable limitations in his ability to handle conflicts with others, understand and respond to social cues, respond to requests, suggestions, criticism, correction, and challenges, and keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." (AR 411.)  Dr. Weber reached nearly identical conclusions in his January 2022 report. (AR 427.)

However, the ALJ found Dr. Bard's opinion as a whole only partially persuasive (AR 25-26), disagreeing that plaintiff had marked limitations interacting with others and would have difficulty interacting with co-workers and supervisors.  In particular, the ALJ noted that Bard's opinions were primarily based on *plaintiff's*, own subjective statements and inconsistent with his cooperating with providers.  (AR 26.)  The ALJ found Dr. Weber's reports unpersuasive for similar reasons, adding that plaintiff had a demonstrated ability to interact appropriately with others, as he had a roommate, played games and ate with others, helped his aunt, talked on the phone, and chatted online.  (AR 28-29.)

Although the ALJ's opinion was generally thorough, she failed to build a logical bridge between the evidence and her decision to reject outright Drs. Bard's and Weber's opinions that plaintiff *was* markedly limited in interacting with others.[2]  For one, the ALJ did not explain how being cooperative during relatively short medical appointments demonstrated that plaintiff could interact appropriately with co-workers and supervisors repeatedly over the course of a workday, much less workweek or work-month.  *See Crump*

---

[2] At this point, the court will assume that a marked limitation in social interaction would preclude plaintiff from even occasional interactions with co-workers and supervisors.  (AR 67.)

6

*v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019) (discussions in a doctor's office and a structured, relatively short mental health examination are "an altogether different environment than a full day at a competitive workplace with sustained demands"); *but see Justin v. Kijakazi*, No. 20-CV-1066-WMC, 2022 WL 2302210, at *4 (W.D. Wis. June 27, 2022) (finding "no fault in the ALJ's reliance, in part, on medical records noting that [plaintiff] was 'friendly and cooperative' during appointments"). Nor is having a roommate the same thing as having co-workers and supervisors -- especially when plaintiff's roommate, Larkin, reported that plaintiff spent 90 percent of the time in his room. (AR 240.) Finally, plaintiff's abilities to eat out, play games, help his aunt, talk on the phone, and chat online do not necessarily translate into working full-time or even occasionally interacting with co-workers and supervisors. *Felicia M. v. Saul*, 2020 WL 5763632, at *7 (N.D. Ill. Sept. 28, 2020) ("the ALJ did not explain how cooperative or polite behavior, or even good familial relationships, translate into a greater ability to socially interact with others").

While the ALJ explained that Dr. Weber's opinions were primarily based on plaintiff's subjective reports, "[m]ental-health assessments normally are based on what the patient says." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019); *but see Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (concluding, in a case involving *physical* limitations, "when a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion").

To be sure, state psychological consultant, Dr. Warren, opined that plaintiff had only moderate limitations in interacting with others and concluded that he was also moderately limited in accepting instructions and responding appropriately to criticism

7

from supervisors. (AR 100.) Nevertheless, Dr. Warren opined that plaintiff could "sustain the basic demands associated with relating adequately with supervisors and co-workers, with limited contact with the general public." (*Id.*)

However, the ALJ did not rely on Dr. Warren's opinion in rejecting Drs. Bard's and Weber's opinions that plaintiff was markedly limited in interacting with others. In fact, the ALJ found Dr. Warren's opinion only partially persuasive, determining that Dr. Warren's conclusion that plaintiff could adequately relate to supervisors and co-workers was not fully consistent with plaintiff presenting as anxious with impaired insight and judgment to his providers. (AR 27.) In fact, the ALJ found limiting plaintiff to occasional interactions with co-workers and supervisors and no public interaction more appropriate. (*Id.*) Accordingly, the court concludes that the ALJ failed to explain adequately her reasoning for rejecting the opinions of Drs. Bard and Weber, entitling plaintiff to a remand on that ground.

## III. Cherry-Picked Evidence and CPP Limitation

Finally, plaintiff asserts that the ALJ improperly cherry-picked the record, ignoring that plaintiff:

- did not make eye contact with providers (AR 332);
- presented with impaired judgment and insight (AR 333);
- reported "hearing things" when anxious (*id.*); and
- reported that he thought a bartender had poisoned him (AR 341).

Plaintiff also asserts that the ALJ ignored evidence in the function report completed by Larkin, including that plaintiff:

8

- yelled and hit himself when video games went poorly (AR 243);

- did not identify social cues and was bullied (AR 243-44);

- needed to be told to stop inappropriate behavior (AR 243);

- yelled at himself and beat his head on a wall when stressed (AR 245); and

- was fired after leaving jobs to have panic attacks (*id.*).

In response, the Acting Commissioner fairly points out that the ALJ discussed at least *some* of the evidence that plaintiff cites (*e.g.*, AR 21 (discussing, among other things, plaintiff's anxiety, impaired insight and judgment, and panic attacks), arguing that the ALJ did not have to discuss "every detail" in the record. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). However, an ALJ cannot rely only on the evidence that supports her opinion. *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). While there is no clear line between omitting a detail and cherry-picking parts of the material record, the ALJ relied substantially on plaintiff's subjective reports about his social activities in concluding that he was less limited in interacting with others than Drs. Bard and Weber had opined, but she failed to even discuss Larkin's statements in the function report indicating that plaintiff struggled to interact with others appropriately. Although plaintiff does not raise it in his brief, the ALJ also did not discuss evidence from an emergency room visit showing that plaintiff had been removed from a bar after becoming argumentative and aggressive. (AR 319.) The ALJ further ignored reports that plaintiff acted inappropriately when frustrated or stressed, including having to leave work because of his panic attacks. On remand, therefore, the ALJ should include a more fulsome analysis of plaintiff's subjective

9

complaints, including those in Larkin's function report, rather than seemingly cherry-pick his best moments.

Relatedly, the ALJ failed to build a logical bridge between limiting plaintiff to simple, routine and repetitive tasks, but not at a production rate pace, and his alleged CPP limits stemming from panic attacks, yelling at himself, and beating his head against a wall when stressed. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace."). Therefore, on remand, the ALJ should also reconsider and account for plaintiff's specific CPP limitations in her RFC assessment.

## ORDER

IT IS ORDERED that:

1) The decision of defendant Leland Dudek, Acting Commissioner of Social Security, denying plaintiff Brock Stevens' application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2) The clerk of court is directed to enter judgment in plaintiff's favor and close this case.

Entered this 31st day of March, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge